## Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347

───

(302) 658-9200
(302) 658-3989 FAX

Rodger D. Smith II
(302) 351-9205
(302) 498-6209 FAX
rsmith@mnat.com

November 28, 2011

**BY E-FILING AND HAND DELIVERY**         REDACTED VERSION - 12/7/11

The Honorable Mary Pat Thynge
United States District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

        Re:    *Eidos Communications, LLC, et al. v. Skype Technologies, SA, et al.*
              C.A. No. 09-234 (SLR)

Dear Judge Thynge:

      I write on behalf of defendants, Skype Technologies SA and Skype, Inc. ("Skype") regarding a dispute that we were unable to resolve with plaintiffs, Eidos Communications, LLC and Message Routes, LLC ("Eidos"), after good faith efforts pursuant to Del. LR 7.1.1.

      Specifically, there are four disputes:  (1) whether Skype should be required to produce copies of its source code, rather than make it available for inspection; (2) whether Skype must provide a multi-million dollar "test environment" to simulate the operation of Skype's peer-to-peer network and the accused products; (3) whether individuals who review Skype's confidential technical information can draft claims in reexamination proceedings; and (4) whether certain in-house attorneys can review confidential litigation materials to manage and assess the merits of the litigation.  Skype's protective order is attached to this letter as Exhibit A.

**A.    Production of Source Code is Risky, Unorthodox, and Burdensome**

      Contrary to normal practice, Eidos insists that Skype physically produce copies of its source code at Eidos's outside counsel's (McKenna Long) offices, rather than make it available for inspection.  *See* Ex. B (8/11/11 Ambrozy Email) at 1; Ex. C (Eidos's 9/8/11 Draft P.O.) at ¶ 9(b)(i).  Skype proposes that this case proceed in typical fashion with source code being made available for inspection at the offices of Skype's outside counsel.  Ex. C at ¶ 9(b)(i).

      Eidos argues that the typical source code inspection process should be altered, radically, because inspection of source code would be costly and would "prevent [Eidos] from having ready access" to Skype's source code.  Ex. D (5/5/11 Ambrozy Letter) at 1.  This is inaccurate.  Skype has offered to make its source code available in its counsels' offices in Delaware, Atlanta,

The Honorable Mary Pat Thynge
November 28, 2011
Page 2

San Francisco, Silicon Valley, or multiple other locations around the country.[1] Eidos's counsel also has offices in Atlanta and San Francisco, and could inspect Skype's code on-demand with reasonable notice and with virtually no burden. Moreover, Eidos has not identified any experts, let alone demonstrated that inspecting code at any of these locations would be burdensome to its experts. Skype's proposed Protective Order permits thoughtful and judicious printing of Skype's code, a provision that is more generous than the default discovery order for source code. And Skype's proposal would protect against impermissible copying and transmission of its source code, whereas Eidos's would not.[2]

As a popular software company, Skype's source code is a carefully guarded trade secret of significant value, and Skype strenuously defends its confidentiality. Strictly-guarded inspections are the norm for good reason: source code, while painstakingly developed, can be copied and propagated across the world with the click of mouse. Eidos's proposal ignores all of this, and introduces unnecessary risks, complexity, and cost. Accordingly, Skype's Paragraph 9(b) should govern in this action.

### B. Skype Should Not be Forced to Build a "Test Environment"

Skype has offered to produce its source code for inspection in the normal fashion on a stand-alone workstation equipped with traditional tools sufficient to search and analyze the code. Ex. A at ¶ 9(b)(i). And running versions of Skype's accused products are available to Eidos for free over the internet. Yet, Eidos demands that Skype build, in the D.C. offices of its counsel, a comprehensive, multi-million dollar "test environment . . . which includes any computers, work stations, servers, and all software necessary to operate or simulate" Skype's accused products. Ex. C at ¶ 9(b)(i). This demand imposes enormous burden, distorts the accused products, and is contrary to the prevailing practice in this Court. *See, e.g.*, Ex. E (providing for inspection of source code on "a stand-alone computer."). Accordingly, it should be rejected.

Eidos argues that it needs the requested test environment to "compile, test, operate, and analyze" Skype's source code. *See* Ex. F (6/6/11 Ambrozy Letter) at 1. This too is wrong. Traditional source code inspection tools, such as those offered by Skype, are sufficient to search and understand Skype's code, and Eidos has not shown why such tools are insufficient. Ex. G (Declaration of Adrian Asher) at ¶ 4. ████████████████████████████████████████ Not surprisingly, Eidos's demand has a unilateral and disproportionate impact on Skype: Eidos has not produced any source code, has not offered to make any source code available for inspection, and contends that it is not withholding any source code. *See* Ex. H (9/15/11 Christenson Email) at 1.

---

[1] Kasowitz also has offices in New York, New Jersey, Miami, and Houston.
[2] For example, Eidos would not block the ports to the inspection machine, would allow for drives to be brought into the inspection room, and would provide for the unsupervised electronic copying of Skype's code. Ex. C at ¶ 9(b)(iii), (vi).
[3] This estimate does not include datacenter rental or power costs.

Beyond the burden, the "test environment" would not faithfully recreate the accused products. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### C. Skype's Reexamination Bar Protects Against Misuse of Litigation Materials

The parties have agreed to a number of protections with respect to prosecution of pending applications, but dispute whether a bar on reexamination proceedings should be included in the Protective Order. Specifically, Eidos argues that a reexamination bar is improper because Delaware courts provide a "carve out" for reissues and reexaminations. *See* Ex. F.

In *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010), the Federal Circuit warned against the difficulty in "selectively suppress[ing] information once learned, no matter how well-intentioned the effort may be to do so." Contrary to Eidos's position, the fact that claims can only be narrowed during prosecution does not ameliorate this serious risk. The parties have agreed that "confidential information **shall not be used for any purpose other than this action**…." Ex. C at 1 (emphasis added). This provision would be violated equally by plugging language from confidential Skype documentation into a narrowed claim, even if inadvertently, as it would a broader one. The fundamental point in both situations is that Eidos should not be permitted to rely on Skype's confidential information to shape the scope of its claims, and thus the scope of its inventions. Simply put, "the risk of the use of confidential information and the harm that the defendants might suffer as a result far outweighs the potential harm to [Plaintiffs] of enforcing the prosecution bar in reexamination." *Edwards Lifesciences AG, v. Corevalve, Inc.*, C.A. No. 08-091-GMS, *slip op*. at 2 (D. Del. Feb. 23, 2011) (Ex. I) (allowing reexamination bar). The Court should adopt Skype's proposed Paragraph 9(c).

### D. Access to Confidential Materials by In-House Counsel

Eidos also seeks to prevent all in-house counsel from having access to the confidential information produced by opposing parties, thereby depriving in-house counsel the opportunity to fully assess the merits of this case, discuss litigation strategy, and fully participate in alternative dispute resolution. Skype, by contrast, proposes that a small number of in-house attorneys be granted access to confidential information so that they may be fully informed in pursuing and assessing this litigation. Here, there is little risk of abuse because the parties are not competitors[4] and because the lawyers Skype would designate are not involved in patent prosecution. In any event, such individuals will be bound by the Protective Order, including any provisions related to the prosecution bar. Moreover, it is important that some individuals at Skype be allowed access to confidential materials in order to properly manage, understand, and evaluate this litigation. *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20 (D. Del. 1988) (in-house counsel may review confidential litigation materials where they did not participate in prosecution activities). Skype's provision 9(a)(ix) should be adopted in the Protective Order.

---

[4] Indeed, Eidos and Message Routes are both non-practicing entities.

The Honorable Mary Pat Thynge
November 28, 2011
Page 4

                                                 Respectfully,

                                                 */s/ Rodger D. Smith II*

                                               Rodger D. Smith II

RDS/lm
cc: All Counsel of Record (by e-mail)

4623065