# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
302 658 9200
302 658 3989 Fax

Rodger D. Smith II
302 351 9205
302 498 6209 Fax
rsmith@mnat.com

February 3, 2012

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, DE 19801

      Re:   *Eidos Communications, LLC, et al. v. Skype Technologies, SA, et al.*
              <u>C.A. No. 09-234 (SLR) (MPT)</u>

Dear Judge Thynge:

      We write on behalf of defendants Skype Technologies SA and Skype, Inc. ("Skype") in response to plaintiffs', Eidos Communications, LLC and Message Routes, LLC ("Plaintiffs"), February 2, 2011, letter (D.I. 91). In an attempt to defend themselves during the discovery hearing initiated by Skype (which seeks to compel service of infringement contentions that are six months overdue), and to excuse their failure to prosecute this case, Plaintiffs blame Skype for each of the discovery disputes they raise with the Court. The actual record proves the opposite – it is Plaintiffs who have refused to cooperate or compromise and who now make unreasonable demands on the Court and on Skype. Plaintiffs' requested relief should be denied.

**A.    Plaintiffs' Proposed Extension Is Unwarranted**

      For nearly three years, Plaintiffs have done virtually nothing to prosecute their case, waiting until the eleventh hour to even notice a deposition. Twice offered the opportunity to review Skype's source code while the parties negotiated the terms of the protective order – first in June 2011 and later in January 2012 – Plaintiffs twice refused. Ex. A (Ankrum 6/29/11 Email); Ex. B (Shear 1/26/12 Email). Moreover, Plaintiffs have repeatedly blocked Skype's attempts to proceed with discovery. For the past six months, Plaintiffs have refused to provide even the most basic disclosure of their infringement theories, which, as of this writing, remain undisclosed. Plaintiffs have also refused to schedule a Rule 30(b)(6) deposition concerning their alleged standing to pursue this action and have refused to produce agreements and other documents related to standing on the basis of a "settlement privilege" not recognized in this Circuit. Ex. C (1/30/12 Christenson Email); Ex. D (1/5/12 Shear Email). In addition, Plaintiffs' litigation counsel – which also prosecuted the patents-in-suit – continues to refuse to produce documents in response to subpoenas seeking materials related to the prosecution of the patents and materials that were in the hands of the specific attorney who was conducting the prosecution. Ex. E (1/30/12 Shear Email). Against this backdrop, and with time running out, Plaintiffs now want to force a lengthy extension to remedy a problem of their own making.

When Plaintiffs first requested a four-month extension in early January, Skype believed that, though it would require diligence by both parties, discovery could be completed by the deadline. But rather than simply reject the request, Skype proposed a compromise – Skype would agree to split the difference by accepting a two-month discovery extension, provided that Plaintiffs would commit to a date-certain for providing infringement contentions that contain a detailed disclosure of Plaintiffs' infringement theories and alleged evidence, including claim charts. Plaintiffs flatly rejected that compromise proposal and, in fact, returned with a demand for even *more* – the same four-month extension as well as Skype's service of supplemental contentions. Ex. F (Christenson 1/20/12 Letter).

Plaintiffs' attempt to excuse their delay by arguing that Skype somehow prevented them from advancing the case by withholding source code is fundamentally inconsistent with the facts. Skype produced the vast majority of its technical and other documents by July 2011. In addition, when negotiations about the protective order continued into June 2011, Skype invited Plaintiffs to inspect its code under temporary provisions so that it could have access to the information. Ex. A (Ankrum 6/29/11 Email). Plaintiffs refused and now fault Skype for having had the courtesy to extend that offer. D.I. 91 at 1-2. Moreover, Plaintiffs did not push for the parties to finalize the protective order, nor did they ask the Court to resolve the disputes. In fact, it was *Skype* that sought to finalize the protective order and ultimately requested the Court's intervention. D.I. 66; Ex. G. These facts belie Plaintiffs' rhetoric blaming Skype for the delay and complaining of alleged prejudice.

Plaintiffs cannot now rely upon their own delays to justify the four-month extension they request. In addition, this lengthy extension would condense expert discovery significantly, which will prejudice Skype without cause. For instance, Plaintiffs' proposed schedule would have claim construction briefing begin the same day as expert discovery closes, with summary judgment briefing following a week later. By contrast, Skype's proposed compromise would allow for more-than-sufficient time to complete fact discovery while still allowing an appropriate amount of time for expert discovery, and would preserve sufficient time between the close of expert discovery and the start of the claim construction and summary judgment phases of the case. For these reasons, the Court should deny Plaintiffs' request.

**B.   Plaintiffs' Defensive Maneuver Regarding Contentions Should Be Rejected**

As explained in Skype's opening letter to the Court (D.I. 90), for six months Plaintiffs have failed to disclose their infringement contentions, despite the Court's admonition and their own promises to do so. Only after Skype requested this teleconference to ask the Court to compel such disclosures did Plaintiffs finally commit to providing claim charts on February 3. In an apparent effort to create a "gotcha" moment, Plaintiffs now demand that Skype provide supplemental invalidity contentions "immediately." After six months of broken promises and delay, Plaintiffs' decision, just now, to serve their infringement contentions in no way justifies this request. This defensive maneuver is a blatant attempt to prejudice Skype and deflect attention from Plaintiffs' calculated refusal to comply with their discovery obligations.

As an initial matter, Skype has already provided invalidity contentions and has supplemented that disclosure as recently as January 26 to include additional information. Skype has not provided claim charts because, as it explained in its July 2011 response, Plaintiffs' infringement contentions set the framework for the validity analysis that will be supplied in this case. In other words, once Plaintiffs commit to what, specifically, is accused and explain why,

Skype will be in a position to compare that alleged patent scope to the prior art. Because Plaintiffs have thus far failed to make that disclosure, Skype is not yet in a position to provide invalidity charts. But, as explained to Plaintiffs in August 2011, Skype has committed to provide such charts within a reasonable time (e.g., 30 days) after receiving Plaintiffs' infringement charts.[1] D.I. 90, Exs. T and U. This staggered disclosure schedule is consistent with this Court's new Default Guidelines as well as the Local Rules for districts across the country. D.I. 90, Ex. B, at 4. Given Skype's pre-existing and long-standing commitment to provide supplemental contentions, an order from this Court regarding supplementation is not necessary. To the extent the Court believes an order is necessary, Skype respectfully requests that the Court provide Skype time consistent with this Court's new Default Guidelines.

### C. Plaintiffs' Printing Provision Should Be Denied

Plaintiffs' request for license to print an unlimited amount of source code without disclosing those printouts to Skype also departs from standard practice in patent cases and from the provisions of the Default Order for source code. As a point of reference, the Default Order allows no printing of source code without Skype's consent. Ex. H (Dflt. Src. Code Order) at 1.

Contrary to Plaintiffs' representations, Skype in fact proposed printing provisions far more generous than the Default Order. Under Skype's proposal, Plaintiffs would be able to have up to four printed copies of portions of source code specifically necessary to a specific case preparation activity. D.I. 91, Ex. M. To prevent misuse of this provision, for example by mass printing of source code files, Skype would have an opportunity to object, but would routinely be required to Bates-stamp the printouts and provide them to Plaintiffs within two business days. This would allow Skype to track how much code, what code, and how many copies of that code were made for security purposes. Unlike Plaintiffs' proposal, it would also ensure that Skype has full and fair access to the Bates-stamped copies of code that Plaintiffs will introduce in depositions and trial, and cite in briefing and expert reports. When Plaintiffs rejected this framework, Skype suggested that the parties consider using the Default Order provision instead.

Plaintiffs demanded – and obtained – access to Skype source code twenty-four hours a day, seven days a week. In addition, Skype located and proposed to Plaintiffs an escrow service that enables Plaintiffs' counsel to conduct this review in their own offices.[2] In other words, Plaintiffs' counsel can review code any time they want without leaving the office. Because they have ready and convenient access to the code, Plaintiffs have no reason to be printing Skype's source code unless they intend to use such printouts in depositions, briefing, expert reports, or at trial. As such, Plaintiffs' claim of work product is curious. And its dogged persistence in seeking to conceal what it would print from Skype's source code computer raises substantial concerns about how Plaintiffs intend to utilize this provision. In sum, Plaintiffs have provided no good reason why they should be permitted to secretly print an unlimited amount of source code, when they can just as easily review the code electronically in their counsel's offices.

---

[1] Skype's commitment to serve supplemental responses is conditioned on receipt of sufficiently detailed infringement contentions (i.e., claim charts disclosing theories, accused features, and alleged evidence on a limitation-by-limitation basis).

[2] Plaintiffs state that Skype has agreed that no notice for inspection is required, which is inaccurate. Skype agreed to investigate whether the thin-client vendor's procedures would eliminate the need for a notice provision.

The Honorable Mary Pat Thynge
February 3, 2012
Page 4

Respectfully,

*/s/ Rodger D. Smith II*

Rodger D. Smith II

RDS/lm
Enclosures
cc: All Counsel of Record (by e-mail)